**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JAMES PARKER, and,
CINDI PARKER

                         Plaintiffs,

v.                                   CIVIL ACTION NO.  2:10-cv-00058

JACKSON COUNTY COMMISSION,

                         Defendant.

**MEMORANDUM OPINION AND REMAND ORDER**

Pending before the Court is Plaintiffs' Motion for Declaratory Judgment [Docket 12].  For the reasons outlined below, the Court has determined that exercising jurisdiction in this case would be inappropriate pursuant to the doctrine of *Burford* abstention.  Accordingly, the Court **REMANDS** this action to the Circuit Court of Jackson County.

*I. BACKGROUND*

This action arises out of the Jackson County Commission's ("Defendant") application of its Revised Floodplain Ordinance ("Floodplain Ordinance") to a mobile home park owned by James and Cindi Parker (collectively "Plaintiffs").  In May of 2006, Plaintiffs purchased the Wilding Mobile Home Park ("Park") in Jackson County, West Virginia,  wherein "all the mobile home lots . . . were already constructed and developed for the purpose of mobile homes."  (Docket 13 at 4.) The Park is located in a part of Jackson County that has been a designated floodplain for over twenty-five years.  On March 15, 2007,  Defendant revised its existing Floodplain Ordinance to include permitting, construction, elevation, and anchoring requirements applicable to "[a]ll

manufactured *homes to be installed* or *substantially improved* within the identified flood hazard areas of Jackson County, West Virginia." (Docket 1-2 at 16 (emphasis added)).  On September 15, 2008, County Floodplain Coordinator Robert Strobbe advised Plaintiffs by letter that the Floodplain Ordinance's revised requirements applied to "any new mobile homes moved into [their] park," although any pre-existing mobile homes in the Park were exempted from compliance. (*Id.* at 38.) Plaintiffs argue that Defendant's application of the new Floodplain Ordinance to the Park's previously developed mobile home *lots* (as distinguished from any existing mobile *homes*) is "contrary to law" and "destroy[s] any economically viable use of the property." (*Id.* at 2, 3.)  In essence, Plaintiffs wish to continue to utilize their Park as though the Floodplain Ordinance had never been enacted, i.e., if any of their existing mobile homes need replacing, they want the replacement homes to be exempt from the  ordinance's requirements.  In the alternative, Plaintiffs want to be compensated by the state.

On June 1, 2009, Plaintiffs filed their first complaint in this matter, alleging general constitutional violations stemming from Defendant's application of the Floodplain Ordinance to the Park's developed lots.  On January 11, 2010, upon agreed order of the parties, Plaintiffs served an amended complaint with a single count of  "Condemnation and Violation of Constitution," containing more specific allegations.  This count asserts that Defendant's application of the Floodplain Ordinance constitutes both (1) "inverse condemnation and taking of the Plaintiffs' property by a governmental action without due process of law. . . . [in violation of] the Fifth Amendment of the United States Constitution and Section 9 of Article III of the West Virginia Constitution" and (2) "an unconstitutional taking of property without just compensation in violation of the Fifth Amendment to the United States Constitution and Section 9 of Article III of the West

Virginia Constitution." (Docket 1-2 at 4.)  Plaintiffs requested three alternative forms of relief: (1) a writ of mandamus requiring Defendants to invoke condemnation proceedings against the Park;[1] (2) a declaratory judgment holding the Floodplain Ordinance "illegal and unenforceable as to Plaintiffs," because the Park's mobile home lots were developed pre-ordinance; or (3) an order limiting the permissible interpretation of the Floodplain Ordinance "to allow for continued use of the Plaintiffs['] property" for all developed lots "in the manner they were used prior to the adoption of the ordinance." (*Id.* at 6.)  Defendants timely removed on January 21, 2010, asserting the Court's original jurisdiction over all claims "arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §§ 1331, 1441.  On March 8, 2010, the parties jointly moved the court to bifurcate the issue of declaratory relief, noting that discovery in this case would be necessary only if declaratory relief were granted.  The Court granted the joint motion on March 16, 2010, and stayed the remainder of the case. (Docket 7.)

Plaintiffs filed their Motion for Declaratory Judgment on June 16, 2010,  urging the Court "to declare that the Flood Plain Ordinance as adopted by the Jackson County Commission does not negate Plaintiffs' ability to use previously developed mobile home lots in its mobile home park that

---

[1] The West Virginia Supreme Court of Appeals notes that "[a] landowner's action to recover just compensation for a taking by physical intrusion has come to be referred to as 'inverse' or 'reverse' condemnation." *W. Va. Dept. of Transp., Div. of Highways v. Dodson Mobile Homes Sales & Serv., Inc.*, 624 S.E.2d 468, 471 n.2 (W. Va. 2005) (quoting *United States v. Clarke*, 445 U.S. 253, 255 (1980)).  "While it appears that West Virginia does not have a *statutory* inverse condemnation procedure, a West Virginia landowner . . . may seek compensation for damage to property by bringing a mandamus action against a state official to compel that official to institute statutory eminent domain proceedings." *Henry v. Jefferson Cty. Planning Comm'n.*, No. 01-9148, 2002 WL 864267, at *3 (4th Cir. May 7, 2002) (emphasis added). Given Plaintiffs' requested relief for an "Order requiring [Defendant] to invoke condemnation proceedings as against [Plaintiffs] for their unconstitutional taking in which the Plaintiffs are compensated for the unlawful taking of their property," it appears that this was exactly what Plaintiffs were attempting to accomplish when the case was removed. (Docket 1-2 at 6.)

were in existence and used prior to the adoption of said Flood Plain Ordinance." (Docket 12 at 1-2.) In the briefing on this motion, the parties have focused almost exclusively on the Floodplain Ordinance's validity under state land use and zoning laws.  In particular, the parties debate the applicability of various West Virginia zoning statutes, statewide building codes, and common law land use doctrines.

## II. DISCUSSION

As noted above, Plaintiffs' complaint asserts a single count of "Condemnation [and] Violation of Constitution," specifically alleging that Defendant's application of the Floodplain Ordinance to their property warrants a state law claim for inverse condemnation and constitutes the taking of their property without just compensation or due process of law in violation of "the Fifth Amendment of the United States Constitution and Section 9 of Article III of the West Virginia Constitution."  (Docket 1-2 at 3-4.)

A.    *Abstention*

"Abstention doctrines constitute 'extraordinary and narrow exception[s]' to a federal court's duty to exercise the jurisdiction conferred on it."  *Martin v. Stewart*, 499 F.3d 360, 363 (4th Cir. 2007) (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716, 728 (1996)).  The Supreme Court has identified several carefully delineated categories of cases where a federal court has discretion to abstain from exercising its jurisdiction. *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 359 (1989) (*NOPSI* ).  The doctrines of abstention "may and should be raised by the Court *sua sponte*."  *Prentiss v. Allstate Ins. Co.*, 87 F. Supp. 2d 514, 517 (W.D.N.C.1999); *see also Bellotti v. Baird*, 428 U.S. 132, 143 n.10  (1976) (noting that "abstention may be raised by the court [s]ua sponte").  For the purposes of the case *sub judice*, the doctrine of *Burford* abstention,

4

*Burford v. Sun Oil Co.*, 319 U.S. 315 (1943), renders inappropriate any exercise of the Court's jurisdiction in this matter.

A federal court has discretion to abstain from exercising its jurisdiction in order to show deference to important state interests. *Burford*, 319 U.S. at 317-18. Specifically, the doctrine of *Burford* abstention allows a federal court to refrain from interfering with complex state regulatory schemes where state-court review is available if a case "[1] presents difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result then at bar, or [2] if its adjudication in a federal forum would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Quackenbush*, 517 U.S. at 726-27 (quoting *NOPSI*, 491 U.S. at 361). Cases involving questions of state land use and zoning law are "classic example[s] of situations where *Burford* should apply," and "federal courts should not leave their indelible print on local and state land use and zoning laws by entertaining these cases and . . . sitting as a zoning board of appeals." *MLC Automotive, LLC v. Town of S. Pines*, 532 F.3d 269, 282-83 (4th Cir. 2008) (quoting *Pomponio v. Fauquier Cty. Bd. of Supervisors*, 21 F.3d 1319, 1324 (4th Cir. 1994) (internal quotations omitted)). The Fourth Circuit has held that:

> [I]n cases in which plaintiffs' federal claims stem solely from construction of state and local land use or zoning law, not involving constitutional validity of the same and absent exceptional circumstances . . . the district courts should abstain under the *Burford* doctrine to avoid interference with a State's or locality's land use policy.

*Id*. (quoting *Pomponio*, 21 F.3d at 1328). There is no specific formula for applying *Burford* abstention; despite the doctrine's "many different forks and prongs, [its] central idea has always been one of simple comity." *MLC Automotive*, 532 F.3d at 280 (quoting *Johnson v. Collins Entm't Co.*, 199 F.3d 710, 710 (4th Cir.1999)).

Although abstention under *Burford* is  "almost never appropriate when a case involves the presence of a genuine and independent federal claim," *Fourth Quarter Props. IV, Inc. v. City of Concord*, 127 F. App'x 648, 654 (4th Cir. 2005) (quoting *Pomponio*, 21 F.3d at 1324),  *Burford* abstention *is* appropriate when a Plaintiffs' constitutional claims are, at their core, issues of "state law in federal law clothing."  *MLC Automotive*, 532 F.3d at 282 (quoting *Johnson*, 199 F.3d at 721 (4th Cir.1999) (cataloging cases)).  Indeed,

> [v]irtually all [cases involving state or local zoning or land use laws], when stripped of the cloak of their federal constitutional claims, are state law cases.  The federal claims are really state law claims because it is either the zoning or land use decisions, decisional processes or laws that are the bases for the plaintiffs' federal claims.

*Pomponio,* 21 F.2d at 1326; *see also MLC Automotive*, 532 F.3d at 276 (*Burford* abstention appropriate where complaint alleged violations of "federal and state substantive due process rights" dependent on a finding that Plaintiff had a vested right in the property as previously zoned).  Accordingly, *Burford* abstention is appropriate when "federal claims are entangled in a skien of state-law that must be untangled before the federal case may proceed."  *McNeese v. Bd. of Ed. for Cmty. Unit Sch. Dist. 187, Cahokia*, 373 U.S. 668, 674 (1963).

The instant case presents just such a "classic example of [a] situation[] where *Burford* should apply." *MLC Automotive*, 532 F.3d at 282 (quoting *Pomponio*, 21 F.3d at 1324).  First and foremost, this case involves difficult questions of state and local land use and zoning law constituting "a complex state regulatory scheme" of which there is adequate state court review available.  *See Millison v. Wilzack*, No. 91-2568, 1992 WL 3205, at *2 (4th Cir. Jan. 13, 1992) (case regarding "complex local sewage regulations" involved "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result" of the case).  Defendant itself has noted that the Floodplain Ordinance stems from "a *comprehensive statutory and*

*regulatory scheme* that is implemented by local county and municipal governments." (Docket 14 at 5 (emphasis added)). Further, the issues in this case are not capable of being straightforwardly resolved. The Floodplain Ordinance at issue is only of recent enactment, and the parties have pointed the Court to no cases engaging in even a cursory application of it or a similar law.[2] Moreover, there can be no doubt that there is more than adequate state-court review of these issues, as they are "important and pressing *local* issues with which the state courts have increased familiarity and experience." *FC Summer Walk, LLC,* 2010 WL 4366287, at *4.

Second, Defendant's declaratory judgment briefing made a compelling argument that the issues in this case "bear[] on policy problems of substantial public import whose importance transcends the result in the case . . . at bar." *Quackenbush*, 517 U.S. at 726-27 (quoting *NOPSI*, 491 U.S. at 361). As their primary argument for uniform application, Defendants have focused on issues of public policy:

> Flooding is well known to be the most serious and most likely natural disaster facing West Virginians. Between 1996 and 2004, the Federal Emergency Management Agency [FEMA] has paid out over $500 million in assistance payments to West Virginia Individuals and communities for property damage from flooding. In that same period of time, all fifty five counties in West Virginia have seen at least one federal disaster declaration from flooding. . . . Participation in the National Flood Insurance Program is contingent upon active participation [in flood management regulatory scheme] by local communities. Without this active participation, residents are unable to purchase flood insurance provided by the federal government.

---

[2] Notably, the parties have engaged in a protracted battle as to whether the Floodplain Ordinance is appropriately interpreted as either a zoning or a stand-alone land use ordinance, which bears on both its statutory validity and its application to Plaintiffs' property. *See FC Summer Walk, LLC, v. Town of Davison*, No. 3:09-cv-266-GCM, 2010 WL 4366287, at *4 (W.D. N. C. Oct 28, 2010) (abstaining on *Burford* grounds where issues in case required "determination of whether [the law at issue] is a zoning or subdivision ordinance, and thus which statute of limitations applies and the appropriate administrative procedure to be followed—all of which need to be determined under state law.").

(Docket 14 at 5 (citations omitted)).  According to Defendant, uniformity in the enforcement of the Floodplain Ordinance is required in order to ensure that the community at large can take advantage of the protections of the National Flood Insurance Program.  The Court is reticent to make a ruling on an issue that could have such far-ranging consequences as denying necessary federal flood insurance to the citizens of Jackson County.

Further, Defendant's argument makes clear that federal adjudication of the issues in this case "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  *Quackenbush*, 517 U.S.  at 726-27.  As noted by the Fourth Circuit, "[f]ederal claims that rest on allegations that a state agency or private actors violated state law can sometimes undermine a state's efforts to regulate uniformly."  *Martin*, 499 F.3d at 367.  Plaintiffs' primary claim rests on the allegation that the Floodplain Ordinance violates established West Virginia land use law, and importantly, all of the relief that they are seeking in this Court is *tailored to their specific parcel of land*.  Plaintiffs are not seeking to strike down the law as whole; they want the Floodplain Ordinance declared "illegal and unenforceable as to Plaintiffs" or for the Court to interpret the Ordinance "to allow for continued use of the Plaintiffs' property . . . in the manner they were used prior to the adoption of the Ordinance." (Docket 1-2 at 6); *see also Martin*, 499 F.3d at 366.  "[T]he Supreme Court has admonished the federal courts to respect the efforts of state governments to ensure uniform treatment of essentially local problems."  *MLC Automotive*, 532 F.3d at 280 (quoting *Johnson*, 199 F.3d at 718-19.)  Granting Plaintiffs the relief they seek would certainly be disruptive of Defendant's efforts to establish a coherent policy on flood management, which is a paradigmatic example of an "issue of public concern." *Quackenbush*, 517 U.S.  at 726-27.

Finally, Plaintiffs have not raised any "genuine and independent federal claims" that would serve to defeat *Burford* abstention. *Fourth Quarter Prop.*, 127 F. App'x at 655. As the Fourth Circuit has noted, "[w]hen a 'federal' claim rests on a violation of state law, we consider it a 'state law [claim] in federal law clothing.'" *Martin*, 499 F.3d at 368 (quoting *Johnson*, 199 F.3d at 721). As the parties have neatly identified for the Court in the declaratory judgment briefing, the Court cannot reach the federal issues in this case *at all* without assessing the validity and applicability of the Floodplain Ordinance under state law. Thus, the federal questions in this case are "entangled in a skien of state-law that must be untangled before the federal case may proceed," *McNeese*, 373 U.S. at 674, and as a matter of comity, the West Virginia state courts should have the first opportunity to address these issues. S*ee Johnson*, 199 F.3d at 720.

"Issues of state law and state public policy have dominated this action from day one." *Id.* at 720. In short, the importance of the state issues presented, as well as West Virginia's interest in uniformly regulating flood management policy, outweighs any federal interest the Court has in adjudicating the case *sub judice*. *See Martin*, 499 F.3d at 360 ("Courts must balance the state and federal interests to determine whether the importance of difficult state law questions or the state interest in uniform regulation outweighs the federal interest in adjudicating the case at bar."). Accordingly, *Burford* abstention is appropriate here.

B. *Remand*

Having decided that *Burford* abstention is appropriate, the Court must decide whether to stay, dismiss, or remand this case. A district court's discretionary authority to dismiss or remand a civil action under the *Burford* abstention doctrine is limited to civil actions where the relief sought by the plaintiff is equitable or otherwise discretionary. *See Quackenbush*, 517 U.S. at 728-31; *Front Royal*

*v. Town of Front Royal*, 135 F.3d 275, 282 (4th Cir.1998).  Here, Plaintiffs' requested relief consists of the discretionary and equitable remedies of mandamus and declaratory relief.  As this case was removed, the Court finds that a remand would be appropriate and in the interests of justice. 17A Charles Allen Wright, Arthur R. Miller & Edward H. Cooper Fed. Prac. & Proc. Juris. § 4245 (3d ed.) ("If a case has been removed from state court to federal court, and it is determined that *Burford*-type abstention is appropriate . . . the federal court may remand the case to state court rather than dismiss.").

### III. CONCLUSION

For the reasons stated above, this case is hereby **REMANDED** to the Circuit Court of Jackson County, West Virginia.  A separate Judgment Order will be entered this day implementing the rulings contained herein.  The Clerk is **DIRECTED** to send a certified copy of this Order to the Clerk of the Circuit Court of Jackson County.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        March 31, 2011

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE